**Opinion issued November 7, 2023**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-22-00622-CV

## NO. 01-22-00852-CV

—————————————

**JUAN ENRIQUEZ, Appellant**

**V.**

**AHMED A. MORSY, M.D., Appellee**

On Appeal from the 10th District Court
Galveston County, Texas
Trial Court Case No. 18-CV-0884

## MEMORANDUM OPINION

This case involves two related appeals arising from the same trial court cause number.  In the first appeal,[1] appellant, Juan Enriquez, challenges the trial court's

---

[1]      Appellate cause no. 01-22-00622-CV (the "sealing-order appeal").

sealing order in his suit against appellee, Ahmed A. Morsy, M.D., for violations of the Eighth Amendment and 42 U.S.C. § 1983 and equitable relief under the Texas Constitution.[2]  In three issues, Enriquez contends that the trial court erred in ordering certain evidence be filed under seal.

In the second appeal,[3] Enriquez challenges the trial court's order granting the plea to the jurisdiction of Dr. Morsy.  In four issues, Enriquez contends that the trial court erred in granting Dr. Morsy's plea to the jurisdiction and dismissing his claims with prejudice.

We affirm.

## Background[4]

In his petition, Enriquez alleged that he, at the time he filed suit, was a prisoner[5] housed in the Michael Unit operated by the Texas Department of Criminal

---

[2]     *See* TEX. R. CIV. P. 76a(8); *see also Kallergis v. Brupbacher*, No. 14-19-00470-CV, 2021 WL 506081, at *2 (Tex. App.—Houston [14th Dist.] Feb. 11, 2021, no pet.) (mem. op.) (noting Texas Rule of Civil Procedure 76a contains "expansive language . . . [in] authorizing appeals").

[3]     Appellate cause no. 01-22-00852-CV (the "plea-to-the-jurisdiction appeal").

[4]     This is not our first appeal involving these parties.  *See Enriquez v. Morsy*, No. 01-18-00877-CV, 2020 WL 4758428 (Tex. App.—Houston [1st Dist.] Aug. 18, 2020, no pet.) (mem. op.).

[5]     On April 25, 1966, Enriquez "shot to death his girlfriend, her father, her brother, a woman he abducted, and a Texas Highway Patrolman." *Enriquez v. Procunier*, 752 F.2d 111, 113 (5th Cir. 1984) (federal habeas proceeding).  On October 19, 1966, a jury convicted him of the offense of capital murder of the woman he abducted, and it assessed his punishment at death. *Id.*; *see also Enriquez v. State*, 429 S.W.2d 141, 142–45 (Tex. Crim. App. 1968) (affirming Enriquez's conviction); *Enriquez v. Hurley*, No. 03-10-00017-CV, 2010 WL 3271962, at *1 n.1 (Tex. App.—Austin

2

Justice-Correctional Institutions Division ("TDCJ-CID") in Tennessee Colony, Texas.[6] According to Enriquez, Dr. Morsy handled "the medical care and treatment of prisoners admitted to" the University of Texas Medical Branch at Galveston ("UTMB").

Enriquez alleged that in November 2014, he reported to prison infirmary staff that he was sick; he had lost his appetite and his food had a metallic taste. He reported that he was "seeing lights and black holes," had chills, and could barely walk. On December 4, 2014, Enriquez purportedly passed out in his cell. On December 10, 2014, Enriquez was seen by a nurse for high blood pressure, shaking, and diabetes. The nurse "referred [him] to a provider." On December 16, 2014, although Enriquez was scheduled to see a provider, he did not see one that day. Enriquez then sought help from Eddie Baker, the Senior Warden of the Michael

---

Aug. 20, 2010, pet. denied) (mem. op.). That sentence was later commuted to life imprisonment. *Procunier*, 752 F.2d at 113; *Hurley*, 2010 WL 3271962, at *1 n.1 ("Enriquez's death sentence was commuted to life imprisonment after the statutory scheme under which his capital punishment was imposed was declared unconstitutional under the 1972 *Furman v. Georgia* decision."). In four other proceedings, Enriquez "pleaded guilty to murder and received three concurrent 99-year sentences and one 25-year sentence." *Procunier*, 752 F.2d at 113.

[6]   The Michael Unit is in Anderson County, Texas. *See Enriquez v. Orihuela*, No. 14-18-00147-CV, 2019 WL 6872946, at *1 & n.2 (Tex. App.—Houston [14th Dist.] Dec. 17, 2019, pet. denied) (mem. op.); *Butts Retail, Inc. v. Diversifoods, Inc.*, 840 S.W.2d 770, 774 (Tex. App.—Beaumont 1992, writ denied) ("The Court may take judicial notice of the location of cities, counties, boundaries, dimensions, and distances because geographical facts such as these are easily ascertainable and capable of verifiable certainty."). In his briefs, Enriquez noted that he was now housed in the Pack Unit operated by TDCJ-CID and located in Navasota, Texas.

Unit, "to help him get examined by a provider," but Baker did not do anything. When Enriquez returned to his living area that day, he was sent to the infirmary "due to his sickly appearance," but he was not treated by infirmary personnel. On December 23, 2014, a prison doctor examined Enriquez and requested an expedited transfer to John Sealy Hospital—a hospital associated with UTMB—for a cancer pathology evaluation. However, Baker did not transfer Enriquez, and prison employees refused to transport him to John Sealy Hospital.

Enriquez further alleged that in January 2015, a nurse practitioner diagnosed him with acute kidney failure and referred Enriquez to John Sealy Hospital. On January 14, 2015, Enriquez was examined at John Sealy Hospital by a hospital resident for prostate and kidney issues. Enriquez was admitted to the hospital and diagnosed with acute kidney failure and benign prostatic hyperplasia.

On January 15, 2015, Dr. Morsy was assigned to be the attending physician for Enriquez. As to Enriquez's acute kidney failure, Enriquez alleged that Dr. Morsy did not inform him "of the extent of [his] kidney damage []or that [he] could die if his kidneys continued to fail." And Dr. Morsy did not address the damage to Enriquez's kidneys or treat Enriquez's kidney failure; instead, he approved Enriquez's discharge from the hospital on January 21, 2015, listing his condition as "fair." According to Enriquez,

> [Dr. Morsy's] failure or refusal to treat [Enriquez's] kidney failure evince[d] a culpable state of mind, an awareness of facts from which

4

the inference c[ould] be drawn that a substantial risk of serious harm to [Enriquez] existed, and a disregard for an excessive risk to [Enriquez's] health and life, which action or inaction resulted in further significant injury to [Enriquez] and in the unnecessary and wanton infliction of pain.

Enriquez alleged that Dr. Morsy was deliberately indifferent to Enriquez's serious medical need, and as a result, Enriquez continued to suffer kidney damage and his life was placed at risk.

As to Enriquez's benign prostatic hyperplasia, Enriquez alleged that on January 17, 2015, a supervising surgeon informed him that she would perform a procedure to correct his inability to urinate. But Dr. Morsy did not tell Enriquez, or explain to him, that the procedure would not ultimately be performed. And although Dr. Morsy knew that Enriquez had been diagnosed with benign prostatic hyperplasia and that the supervising surgeon felt that a surgical procedure needed to be performed, Dr. Morsy failed to or refused to provide Enriquez with the procedure necessary to correct his benign prostatic hyperplasia and address Enriquez's inability to urinate. Instead, Dr. Morsy discharged him from the hospital on January 21, 2015. Enriquez alleged,

> [Dr. Morsy's] failure or refusal to correct [his benign prostatic hyperplasia] evince[d] a culpable state of mind, an awareness of facts from which the inference c[ould] be drawn that a substantial risk of serious harm to [Enriquez] existed, and a disregard for an excessive risk to [Enriquez's] health and life, which action or inaction resulted in further significant injury to [Enriquez] and the unnecessary and wanton infliction of pain.

5

On March 6, 2015, another nurse practitioner examined Enriquez and diagnosed him with "anemia due to kidney damage." Although Enriquez continued to complain of "kidney failure symptoms," nothing was done to treat his anemia.

On May 28, 2015, Enriquez was examined at John Sealy Hospital by a hospital resident. Enriquez asked the resident to address and treat the issues with his kidneys, including his anemia. But the resident only addressed matters related to Enriquez's benign prostatic hyperplasia. According to Enriquez, while at the hospital, Dr. Eduardo Orihuela saw and examined Enriquez and "actively participated in the decision-making process." And Dr. Orihuela refused to comply with Enriquez's request for treatment related to his anemia and acute kidney failure. On June 8, 2015, Enriquez was again seen by the nurse practitioner who noted his anemia and ordered blood tests, but his anemia remained untreated and unaddressed.

Later in 2015, despite repeated requests to be treated for kidney and catheter issues, including a urinary tract infection ("UTI"), and to get the results of his previous blood tests, Enriquez did not see a provider for several months. On August 28, 2015, Enriquez was seen by Dr. Thomas Williams who ordered additional testing related to Enriquez's UTI, referred Enriquez for a "TURK procedure" to correct his benign prostatic hyperplasia, and scheduled Enriquez for an appointment to treat his UTI. Prison employees did not produce Enriquez for that appointment. On September 10, 2015, Enriquez was seen by Dr. Gary Wright who ordered new blood

6

tests and scheduled Enriquez for a follow-up appointment. On October 7, 2015, prison employees did not produce Enriquez for his appointment. Because Enriquez's UTI became "so severe," on October 21, 2015, he was transported to Palestine Regional Medical Center and diagnosed with an epididymis infection.

In February 2016, Enriquez's epididymis infection returned, but prison nurses refused to examine him. On February 22, 2016, Enriquez was transported to the prison infirmary on a gurney, examined, and treated with antibiotics for ten days. The antibiotics were not effective, and on March 7, 2016, a nurse practitioner examined Enriquez and ordered antibiotic shots and oral antibiotics. But the nurse scheduled to administer the shots told Enriquez that they were no longer available, and the oral antibiotics did not resolve Enriquez's infection for thirty days. During those thirty days, Enriquez continued to suffer chills, fever, loss of appetite, loss of energy, and extreme pain.

According to Enriquez, Dr. Lannellee Linthicum, the Director of Medical Services for TDCJ-CID, had a policy and practice of allowing prisoners' serious medical needs to go unattended, undiagnosed, and untreated as dictated by prison policies promulgated and implemented by Dale Wainwright, the chairman of the Texas Board of Criminal Justice ("TBCJ"), Brad Livingston, the executive director of the TDCJ, and Baker. And in the Michael Unit, operated by TDCJ-CID, the providers did not have the necessary medication, testing capability, or supplies to

7

treat the serious medical needs of prisoners. Such circumstances caused Enriquez to develop chronic UTIs and led to the providers' failures to detect Enriquez's acute kidney failure and infections. And Enriquez was denied treatment for his serious medical needs.

Enriquez brought claims against Dr. Morsy[7] for violations of the Eighth Amendment and 42 U.S.C. § 1983[8] based on his "deliberate indifference to serious medical need of treatment for acute kidney failure," "deliberate indifference to serious medical need to correct benign prostatic hyperplasia," and "deliberate indifference to serious medical need for treatment of [UTIs]." Enriquez also alleged a negligence claim against Dr. Morsy and sought exemplary damages resulting from Dr. Morsy's "gross negligence, malice, or fraud." Enriquez further sought equitable relief under the Texas Constitution, and in his prayer for relief, he requested a writ

---

[7]    Enriquez brought claims against other defendants as well. But they are no longer parties to this case. *See Morsy*, 2020 WL 4758428, at *1–5.

[8]    *See* U.S. CONST. amend. VIII; 42 U.S.C. § 1983. 42 U.S.C. § 1983 provides a remedy when any "person" acting under color of state law deprives another of rights, privileges, or immunities protected by the United States Constitution or laws. *Thomas v. Collins*, 960 S.W.2d 106, 109 (Tex. App.—Houston [1st Dist.] 1997, pet. denied). Enriquez, in his petition, referenced the Eighth Amendment and 42 U.S.C. § 1983 and cited a case involving the Eighth Amendment and § 1983 claims. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (deliberate indifference to serious medical needs constitutes unnecessary and wanton infliction of pain proscribed by Eighth Amendment and deliberate indifference to prisoner's serious illness or injury states cause of action under § 1983); *see also Williams v. Casal*, No. 08-03-00396-CV, 2004 WL 1932649, at *3 (Tex. App.—El Paso Aug. 31, 2004, no pet.) (mem. op.) (construing pro se prisoner's petition liberally in determining he had raised claim for violations of Eighth Amendment and 42 U.S.C. § 1983).

of mandamus "directing [Dr. Morsy] to provide [him] with either transurethral microwave thermotherapy or transurethral needle ablation," performed by a doctor not connected with TDCJ or UTMB, to correct his benign prostatic hyperplasia; a writ of mandamus "directing [Dr. Morsy] to provide [him] with a comprehensive evaluation of the damage to his kidneys and the treatment necessary to repair or restore them," performed by a doctor not connected to TDCJ or UTMB; a writ of mandamus "directing [Dr. Morsy] to provide [him] with the treatment necessary to correct or cure [his] anemia," performed by a doctor not connected to TDCJ or UTMB; "[p]rospective equitable relief"; actual, exemplary, and nominal damages; pre- and post-judgment interest; and any other relief in equity or law.

Dr. Morsy answered, generally denying the allegations in Enriquez's petition. Dr. Morsy then moved to dismiss Enriquez's claims against him under the Texas Tort Claims Act ("TTCA") and Texas Civil Practice & Remedies Code chapter 14.

In response to Dr. Morsy's motion to dismiss, Enriquez argued that his claims against Dr. Morsy were not subject to dismissal under the TTCA because he had "sued [Dr.] Morsy under Title 42 U.S.C., Section 1983, for damages due to violation[s] of [his] Eighth Amendment right to be free from cruel and unusual punishment" as well as "Article 1, Section 19, of the Texas Constitution for equitable relief due to violation[s] of his rights under the Texas Bill of Rights." In other words,

Enriquez asserted that he had not brought "tort claims" against Dr. Morsy, and, as such, the TTCA did not apply.[9]

After Dr. Morsy filed a reply to Enriquez's response, the trial court, without specifying the grounds, signed an order granting Dr. Morsy's motion to dismiss and dismissing Enriquez's suit, in its entirety, against Dr. Morsy.

On appeal, this Court affirmed the portion of the trial court's order dismissing Enriquez's tort claims against Dr. Morsy.[10] But we reversed the portion of the trial court's order dismissing Enriquez's claims against Dr. Morsy for violations of the Eighth Amendment and 42 U.S.C. § 1983 based on the "deliberate indifference to serious medical need" and for equitable relief under the Texas Constitution.[11] We remanded the case to the trial court for further proceedings consistent with our opinion.[12]

Following remand, Dr. Morsy filed a plea to the jurisdiction, motion for summary judgment, and motion to dismiss related to Enriquez's remaining claims for violations of the Eighth Amendment and 42 U.S.C. § 1983 based on the "deliberate indifference to serious medical need" and for equitable relief under the

---

[9]     Enriquez also asserted that his claims against Dr. Morsy should not be dismissed under Texas Civil Practice and Remedies Code chapter 14.

[10]    *See Morsy*, 2020 WL 4758428, at *11–17.

[11]    *See id.* (expressing no opinion on the merits of Enriquez's remaining claims).

[12]    *See id.* at *17.

10

Texas Constitution.[13]  In connection with his motion, Dr. Morsy filed a motion for leave to file certain evidence supporting his motion under seal, asserting that Enriquez's claims arose from his medical treatment at UTMB and Dr. Morsy was a physician involved with Enriquez's medical treatment.  Dr. Morsy requested that he be permitted to file certain evidence under seal so that he did not violate the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").[14]

Enriquez opposed Dr. Morsy's motion for leave to file certain evidence under seal because, according to Enriquez, the "motion or request [was] pre[mature]," the "request [was] overbroad," and there was "no reason to seal at th[e] time."

The trial court held a hearing on Dr. Morsy's motion for leave to file certain evidence under seal.  When asked by the trial court whether he was opposed to the trial court granting the motion, Enriquez responded, "At this time, I am.  I just don't see a need for it right now."  Enriquez further stated that he was "just opposed."  The trial court granted Dr. Morsy's motion, allowing him to file under seal certain

---

[13]    After Dr. Morsy filed his plea to the jurisdiction, motion for summary judgment, and motion to dismiss, Enriquez filed a "supplement" to his petition to "provid[e] a more definite statement of the claims against [Dr.] Morsy."  Dr. Morsy then filed a supplemental plea to the jurisdiction and supplemental motion for summary judgment to address Enriquez's supplemental filing.

[14]    Generally, HIPAA prohibits a health care provider from disclosing a patient's protected health information.  *See Daywalker v. Univ. of Tex. Med. Branch at Galveston*, Civil Action No. 3:20-cv-00099, 2021 WL 4099827, at *2 (S.D. Tex. Sept. 9, 2021) (op. and order); *see also* 45 C.F.R. § 164.502.

evidence to support his plea to the jurisdiction, motion for summary judgment, and motion to dismiss.

As to his plea to the jurisdiction, motion for summary judgment, and motion to dismiss, Dr. Morsy stated that he was filing a plea to the jurisdiction related to Enriquez's claims against him for equitable relief under the Texas Constitution and Enriquez's request for a writ of mandamus because the trial court lacked subject-matter jurisdiction. He also moved for summary judgment on Enriquez's claims against him—claims for violations of the Eighth Amendment and 42 U.S.C. § 1983 based on the "deliberate indifference to serious medical need," for equitable relief under the Texas Constitution, and for the requested writ of mandamus— asserting that he was entitled to judgment as a matter of law on Enriquez's claims and no evidence existed "of one or more essential elements" of Enriquez's claims for violations of the Eighth Amendment and 42 U.S.C. § 1983. And Dr. Morsy moved to dismiss Enriquez's claims against him for failure to comply with Texas Civil Practice and Remedies Code chapter 74's medical expert requirements, explaining that Enriquez had alleged claims against Dr. Morsy, a physician, related to Enriquez's "treatment, lack of treatment, or [an] alleged departure from accepted standards of medical care that he [asserted] resulted in injury and damages." Because Enriquez's claims against Dr. Morsy constituted health care liability claims, he was required to serve Dr. Morsy with an expert report and curriculum vitae, which

he had not done, and this meant that the trial court had to dismiss Enriquez's claims against Dr. Morsy with prejudice. Dr. Morsy requested that the trial court grant his plea to the jurisdiction, motion for summary judgment, and motion to dismiss. Dr. Morsy filed under seal certain evidence in support of his plea to the jurisdiction, motion for summary judgment, and motion to dismiss.[15]

Following Dr. Morsy's filing of his plea to the jurisdiction, motion for summary judgment, and motion to dismiss, Enriquez filed a "Supplement to his Original Complaint Providing a More Definite Statement of the Claims Against [Dr.] Morsy." Related to UTMB, Enriquez alleged that on January 14, 2015, he was examined at UTMB by Dr. Daniel Bellow, who "determined [that his] prostate gland was not cancerous but enlarged." Enriquez was admitted to UTMB and diagnosed with acute kidney injury and benign prostatic hyperplasia. On January 15, 2015, "a renal ultra[sound]" showed damage to Enriquez's kidneys. Also, on January 15, 2015, Enriquez was "seen by a panel of doctors," the head of which told Enriquez that he did not have prostate cancer, but he had "an enlarged prostate gland which caused his kidneys to fail due to urine back-up." Enriquez was told that "an

---

[15] Although Enriquez complains that certain evidence was filed under seal in the trial court, when he believes it should not have been, we do not directly discuss this sealed evidence in this memorandum opinion because it is not necessary for our disposition. *See generally Hunter v. Marshall*, No. 01-16-00636-CV, 2018 WL 6684840, at *1 n.4 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018, no pet.) (mem. op.) (discussing reasoning for vague record references where trial court has signed sealing order).

13

attending physician would be assigned to [him]" and that physician would be responsible for his treatment. On January 16, 2015, Dr. Robyn Crowell visited Enriquez and told him that she would perform a procedure to "correct his inability to urinate."

As to Dr. Morsy, Enriquez alleged that on January 17, 2015, Dr. Morsy was assigned as the attending physician for Enriquez. According to Enriquez, Dr. Morsy knew that Enriquez's kidneys had failed and "remained in a failed state." And that Enriquez's kidneys had been "seriously damaged," and he was in pain. Although Enriquez told Dr. Morsy that he "wanted a full evaluation of his kidneys and . . . whatever treatment was available for failed kidneys," Dr. Morsy "refused to treat [Enriquez's] kidney failure and refused to order a complete evaluation of [his] kidneys." Dr. Morsy told Enriquez that "he was not a nephrologist and could not treat kidneys and . . . he could not order an evaluation of [Enriquez's] kidneys because [Enriquez] had been admitted under a diagnosis of acute kidney injury and not a diagnosis of [a]cute [k]idney [f]ailure." And UTMB had a policy "to treat only diagnosed admissions . . . with prisoner patients." Further, although Enriquez told Dr. Morsy that "he did not want to be discharged from the hospital until his kidneys were treated and until he had a full examination of his kidneys and was given a prognosis of what he could expect from his medical problems," Dr. Morsy stated that "he could not do that with a prisoner patient." Dr. Morsy told Enriquez that "he

14

realized the seriousness of [Enriquez's] kidney failure and that he also realized that it could be fatal but that he could do nothing for [Enriquez] . . . except discharge him to a medical unit." According to Enriquez, on January 21, 2015,

> [Dr. Morsy] discharged [Enriquez] from UTMB[] without treating or addressing [his] serious medical need [for] treatment for [a]cute [k]idney [f]ailure, without ordering an evaluation of [his] kidneys, without waiting until [his] kidneys reached a non-failed state, and without referring [his] case to a nephrologist who might have been willing to treat [his] kidney failure.

And this caused Enriquez "subsequent pain and suffering," further damage to his kidneys, anemia, UTIs, and was a risk to Enriquez's "health and life." Enriquez alleged that Dr. Morsy was "deliberately indifferent to [his] serious diagnosed medical needs."

In response to Enriquez's "Supplement to his Original Complaint Providing a More Definite Statement of the Claims Against [Dr.] Morsy," Dr. Morsy filed a supplement to his plea to jurisdiction and motion for summary judgment, asserting that in addition to the grounds raised in his plea to the jurisdiction, motion for summary judgment, and motion to dismiss, he was entitled to dismissal of Enriquez's claims based on his plea to the jurisdiction because the trial court lacked subject matter jurisdiction as Enriquez had failed to comply with the applicable statute of limitations. And Dr. Morsy argued that the was entitled to judgment as a matter of law on Enriquez's claims against him because Enriquez sued Dr. Morsy based on medical treatment that ended on January 21, 2015 and "did not serve Dr.

15

Morsy until several months after the applicable statute [of limitations period] had run." Dr. Morsy attached certain exhibits to his supplement, some of which were filed under seal.

Enriquez filed a response to Dr. Morsy's plea to jurisdiction, motion for summary judgment, and motion to dismiss and a response to Dr. Morsy's supplement to his plea to the jurisdiction and motion for summary judgment.

Following a hearing, the trial court signed an order granting Dr. Morsy's plea to the jurisdiction and dismissing Enriquez's claim against Dr. Morsy for equitable relief under the Texas Constitution and Enriquez's request for a writ of mandamus for lack of jurisdiction. The trial court, in its order, also granted Dr. Morsy summary judgment on all of Enriquez's claims against him and ordered that Enriquez take nothing on his claims against Dr. Morsy. Finally, the trial court granted Dr. Morsy's motion to dismiss all of Enriquez's claims against him based on Enriquez's failure to comply with Texas Civil Practice and Remedies Code chapter 74.

### Sealing-Order Appeal[16]

In his first and second issues, Enriquez argues that the trial court erred in granting Dr. Morsy's motion for leave to file certain evidence under seal because Dr. Morsy "did not provide public notice" as required by Texas Rule of Civil

---

[16] Appellate cause no. 01-22-00622-CV.

Procedure 76a and Dr. Morsy "did not provide the grounds or the evidence required for a court to grant a motion to seal records."[17]

Notably, to preserve a complaint for appellate review, Texas Rule of Appellate Procedure 33.1 requires a party to first make a complaint to the trial court by "a timely request, objection, or motion." TEX. R. APP. P. 33.1(a)(1); *see also Valdez v. Valdez*, 930 S.W.2d 725, 728 (Tex. App.—Houston [1st Dist.] 1996, no writ) (because party never complained to the trial court, he never gave trial court opportunity to correct alleged error). If a party fails to do this, error is not preserved, and the complaint is waived. *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991); *see also Humble Surgical Hosp., LLC v. Davis*, 542 S.W.3d 12, 21 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ("Rule 33.1 requires the appealing party to adequately raise issues before the trial court to give the trial court notice of [the party's] complaint."). An objection stating one legal basis may not be used to

---

[17] In his third issue, Enriquez argues that the trial court erred in granting Dr. Morsy's motion for leave to file certain evidence under seal because the trial court's sealing order did not meet the requirements of Texas Rule of Civil Procedure 76a. Although this issue is raised in the "Issues Presented" section of Enriquez's brief, Enriquez provides no substantive analysis or citation to appropriate authority to support his assertion. *See* TEX. R. APP. P. 38.1(i) ("[Appellant's] brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). The failure to provide substantive analysis of an issue or cite appropriate authority waives a complaint on appeal. *Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 75 (Tex. App.—San Antonio 2011, no pet.); *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.). Thus, we hold that Enriquez has waived his third issue due to inadequate briefing.

support a different legal theory on appeal. *See McKee v. McNeir*, 151 S.W.3d 268, 270 (Tex. App.—Amarillo 2004, no pet.) (holding appellant waived complaint because issue on appeal did not comport with argument made in trial court).

On appeal, Enriquez argues that the trial court should not have granted Dr. Morsy's motion for leave to file certain evidence under seal because Dr. Morsy "did not provide public notice" as required by Texas Rule of Civil Procedure 76a and Dr. Morsy "did not provide the grounds or the evidence required for a court to grant a motion to seal records." But appellant did not raise either of these arguments in the trial court. In his response to Dr. Morsy's motion for leave, appellant argued that the trial court should not grant the motion because the "motion or request [was] pre[mature]," the "request [was] overbroad," and there was "no reason to seal at th[e] time." And at the hearing on Dr. Morsy's motion for leave, Enriquez simply told the trial court that he "just opposed" the sealing of the records. A party's complaint that the trial court did not comply with Texas Rule of Civil Procedure 76a can be waived for failure to comply with Texas Rule of Appellate Procedure 33.1(a)'s preservation requirement. *See Kallergis v. Brupbacher*, No. 14-19-00470-CV, 2021 WL 506081, at *3 (Tex. App.—Houston [14th Dist.] Feb. 11, 2021, no pet.) (mem. op.); *Rice v. Lewis Energy Grp., L.P.*, No. 04-19-00234-CV, 2020 WL 6293454, at *7 (Tex. App.—San Antonio Oct. 28, 2020, no pet.) (mem. op.); *McAfee, Inc. v. Weiss*, 336 S.W.3d 840, 843 (Tex. App.—Dallas 2011, pet. denied).

Accordingly, we hold that Enriquez has not preserved his first and second issues in his sealing-order appeal for appellate review.[18]

## Plea-to-the-Jurisdiction Appeal[19]

In his first, second, third, and fourth issues, Enriquez argues that the trial court erred in granting Dr. Morsy's plea to the jurisdiction because the trial court's "order d[id] not have a factual or legal basis" and Dr. Morsy "did not present any evidence controverting or refuting Enriquez'[s] pleaded jurisdictional claims."[20]

---

[18] Although Enriquez is representing himself, he is held to the same standard as a licensed attorney and must comply with all applicable laws and rules of procedure. *See Tyurin v. Hirsch & Westheimer, P.C.*, No. 01-17-00014-CV, 2017 WL 4682191, at *1–2 (Tex. App.—Houston [1st Dist.] Oct. 19, 2017, no pet.) (mem. op.); *In re Estate of Taylor*, 305 S.W.3d 829, 837 (Tex. App.—Texarkana 2010, no pet.). "A pro se litigant is required to properly present [his] case on appeal, just as [he] is required to properly present [his] case to the trial court." *In re Estate of Taylor*, 305 S.W.3d at 837.

[19] Appellate cause no. 01-22-00852-CV.

[20] On September 22, 2023, Enriquez filed a motion to supplement his brief and a supplemental brief in his plea-to-the-jurisdiction appeal. Enriquez filed his original appellant's brief on February 8, 2023. His supplemental brief, filed more than seven months after his original appellant's brief, attempts to raise new issues that could have been previously raised by Enriquez in his original appellant's brief. As such, we liken Enriquez's request to supplement to a situation where an appellant has attempted to raise a new issue in a reply brief. *See Sea Mist Council of Owners v. Bd. of Adjustments for Town of South Padre Island Tex.*, No. 13-09-601-CV, 2010 WL 2891580, at *3 (Tex. App.—Corpus Christi–Edinburg July 22, 2010, no pet.) (mem. op.). A reply brief may not be used to raise new issues. *See Warwick Oil & Gas, Inc. v. FBS Props., Inc.*, No. 01-14-00290-CV, 2015 WL 3637988, at *9–10 (Tex. App.—Houston [1st Dist.] June 11, 2015, no pet.) (mem. op.); *Sea Mist Council of Owners*, 2010 WL 2891580, at *3. Thus, we deny Enriquez's motion to supplement his brief and strike his supplemental brief filed on September 22, 2023. *See Warwick Oil & Gas*, 2015 WL 3637988, at *9–10; *Sea Mist Council of Owners*, 2010 WL 2891580, at *3; *see also Caldwell v. Zimmerman*, No. 03-17-00273-CV, 2017 WL 4899447, at *3 n.3 (Tex. App.—Austin Oct. 26, 2017, pet. denied) (mem.

Here, Enriquez, in his briefing, challenges the trial court's granting of Dr. Morsy's plea to the jurisdiction. However, the trial court, in the underlying proceeding, did not just grant Dr. Morsy's plea to the jurisdiction. It also granted Dr. Morsy summary judgment on all of Enriquez's claims against him and ordered that Enriquez take nothing on his claims against Dr. Morsy. Further, the trial court granted Dr. Morsy's motion to dismiss all of Enriquez's claims against him based on Enriquez's failure to comply with Texas Civil Practice and Remedies Code chapter 74. An appellant must attack all independent bases or grounds that fully support the complained-of order or judgment. *See Oliphant Fin. LLC v. Angiano*, 295 S.W.3d 422, 423–24 (Tex. App.—Dallas 2009, no pet.); *Britton v. Tex. Dep't of Crim. Justice*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.). If an independent ground fully supports the complained-of order or judgment, but the appellant assigns no error to that independent ground, we must accept the validity of the unchallenged independent ground and thus any error in the ground challenged on appeal is harmless because the unchallenged independent ground fully supports the complained-of order or judgment. *See Oliphant Fin.*, 295 S.W.3d at 423–24; *Britton*, 95 S.W.3d at 681; *see also In re A.K.P.*, No. 06-19-00075-CV, 2020 WL

---

op.) (where appellant filed supplemental brief raising issues not raised in his appellant's brief, declining to consider those issues); *Wilson v. State*, 811 S.W.2d 700, 702 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd) ("A point of error raised for the first time in a supplemental brief is not properly presented for appellate review.").

465281, at \*2 (Tex. App.—Texarkana Jan. 29, 2020, no pet.) (mem. op.) ("When an appellant fails to challenge an alternate basis for the appealed order, any error in the challenged basis for the order is rendered harmless." (internal quotations omitted)). Enriquez, on appeal, does not challenge the trial court's rulings granting Dr. Morsy's motion for summary judgment or granting Dr. Morsy's motion to dismiss.[21]  Thus, we hold that the trial court did not error in dismissing Enriquez's claims against Dr. Morsy.  *See Oliphant Fin.*, 295 S.W.3d at 424; *Britton*, 95 S.W.3d at 681–82.

We overrule Enriquez's first, second, third, and fourth issues in his plea-to-the-jurisdiction appeal.

## Conclusion

We affirm the orders of the trial court.

Julie Countiss
Justice

Panel consists of Chief Justice Adams and Justices Hightower and Countiss.

---

[21]  As previously noted, Enriquez, although proceeding pro se, is held to the same standard as a licensed attorney and must comply with all applicable laws and rules of procedure.  *See Tyurin*, 2017 WL 4682191, at \*1–2; *In re Estate of Taylor*, 305 S.W.3d at 837.  "A pro se litigant is required to properly present [his] case on appeal, just as [he] is required to properly present [his] case to the trial court."  *In re Estate of Taylor*, 305 S.W.3d at 837.